[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11989
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-00138-UA-DNF


AMBER HATCHER,
by and through her next friend, Gregory Hatcher,
GREGORY HATCHER,

                                                    Plaintiffs-Appellees,

versus

SHANNON FUSCO,
as DeSoto County High School Principal,
in her personal and official capacities,
and her successors in office,

                                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 30, 2014)

Before HULL, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Amber Hatcher claims that the principal of her public high school, Shannon Fusco, and others violated her rights under the First and Fourteenth Amendments to the United States Constitution.  Hatcher brought suit in federal court under 42 U.S.C. § 1983.  As relevant on appeal, Fusco moved to dismiss the individual-capacity claims against her on the ground that she was entitled to qualified immunity.  The district court denied Fusco's motion in part.  Fusco appealed.  We have jurisdiction under the "collateral order doctrine."  See Keating v. City of Miami, 598 F.3d 755, 759-60 (11th Cir. 2010).  We affirm.

I.

At this stage, we assume that all well-pled factual allegations in Hatcher's complaint are true.[1]  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1948 (2009).  The following is a relevant subset of those allegations.  We, of course, offer no opinion about whether they are actually true.

When Hatcher was a freshman at DeSoto County High School in Arcadia, Florida, she and other students sought to participate in a national event called "Day of Silence" on Friday, April 20, 2012.  "Day of Silence" occurs at thousands of middle schools, high schools, and universities nationwide.  On the day in question,

---

[1]    Conclusory allegations are not assumed to be true.  Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010).

2

participating students vow to take a form of silence in order to draw attention to the silencing effect of bullying and harassment directed toward lesbian, gay, bisexual, and transgender ("LGBT") students.

Approximately four weeks before the event, Hatcher described it to Principal Fusco and asked for permission to participate. Fusco contacted her boss, the superintendent of the school district. He informed Fusco that it was district practice not to approve student protests and that Hatcher's event was disapproved. Fusco relayed this information to Hatcher.

Hatcher contacted the superintendent directly by email, claiming a right to participate under both district policy and also the United States Constitution. She quoted from a publicly-available legal analysis, which also stated that there are "limits on free speech rights at school," including that "[i]f a teacher tells a student to answer a question during class, the student generally doesn't have a constitutional right to refuse to answer."[2] Hatcher asked for the administration's cooperation and for permission to put up posters. She indicated that many students would participate whether the event was approved or not. The superintendent forwarded at least one of these emails to Fusco.

---

[2]    Copies of Hatcher's emails were attached to the complaint. For the purpose of this analysis, we treat the attachments as part of the complaint. See Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215-16 (11th Cir. 2012).

Meanwhile, Hatcher approached Fusco twice more, arguing that the event should be allowed. On each such instance, Fusco told Hatcher "no" and "what the ramifications would be if the protest occurred."

The day before the event, on Thursday, April 19, 2012, Fusco called Hatcher out of class and into her office, where she warned that if Hatcher came to school the following day and "was quiet, there would be disciplinary consequences." Fusco also telephoned Hatcher's parents on several consecutive days prior to the event, asking them to convince Hatcher not to participate. Fusco told Hatcher's parents that there would be "consequences" if she did participate. She suggested that they keep Hatcher home from school in order to "avoid problems."

On the morning of the event, Friday, April 20, 2012, Fusco sent an email to all teachers at DeSoto County High School containing the following language:

> If you have students who are wearing placards in protest of an issue or disrupting the hallways or classrooms, please notify the dean or administration and we will handle it.

> If a student refuses to participate in class by taking part in a silent protest, that is considered a disruption. Again, please notify the administration, and we will handle it.

That day, Hatcher wore a red t-shirt to school bearing the words "DOS April 20, 2012: Shhhhh." She also attempted to keep silent. She communicated with the aid of a dry-erase board, handed out information about her reason for keeping silent,

4

and asked friends to explain on her behalf.  She did not, however, refuse to respond to any teacher or instruction.

Hatcher's first- and second-period classes proceeded without incident.  Early in the third period, however, she was summoned to the office of the dean of students.  The dean gave her a choice between in-school and out-of-school suspension.  When Hatcher asked why she was being punished, the dean responded, "Mrs. Fusco told you not to do this."  Hatcher was placed in in-school suspension, isolated from her peers and classroom activities for the rest of the day.  One other student was similarly punished.

The following Monday, April 23, 2012, Principal Fusco sent an email to the superintendent's executive assistant, reporting that "only two students received any consequences from protesting for LGBT day of silence."

## II.

As relevant on appeal, Hatcher sued Fusco in her individual capacity. Hatcher claims that Fusco violated her First Amendment rights to free expression and against retaliation.  Hatcher also claims that Fusco is liable under the Fourteenth Amendment for the actions of Fusco's subordinates.  The district court denied Fusco's motion to dismiss these counts pursuant to Federal Rule of Civil Procedure 12(b)(6).  Fusco appeals that decision.

5

Our review is de novo.  Keating v. City of Miami, 598 F.3d 755, 759-60 (11th Cir. 2010).  In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must state well-plead factual allegations that, taken as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1948 (2009).  Under the doctrine of qualified immunity, a government official in a § 1983 suit is not liable in damages for alleged misconduct within the scope of her discretionary authority[3] unless she violated "clearly established" federal statutory or constitutional right(s) about which a reasonable person would have known.  Keating, 598 F.3d at 762.

### III.

Fusco does not challenge the district court's conclusion that Hatcher alleged a "clearly established" constitutional violation.  Cf. Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 89 S. Ct 733 (1969); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004).  Rather, Fusco argues that her alleged role is insufficient to support a reasonable inference that she was among the violators.  We disagree.

---

[3]    It is undisputed that Fusco was acting within the scope of her discretionary authority.  In the qualified immunity context, a government official acts within the scope of her discretionary authority when she pursues a job-related goal through means that are within her power to utilize.  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265-66 (11th Cir. 2004).

6

"[S]upervisors are liable under § 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'"  Keating, 598 F.3d at 762 (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)).  "A causal connection can be established by, inter alia, 'facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  Id. (quoting Gonzalez, 325 F.3d at 1235).

In this case, the well-pled factual allegations support a reasonable inference that Fusco personally attempted to dissuade Hatcher from participating in "Day of Silence."  According to the complaint, Fusco repeatedly threatened Hatcher and her parents with "consequences" for Hatcher's participation.  We reject Fusco's argument that the only reasonable inference is that she was following the superintendent's orders.[4]  The allegations also support a reasonable inference that Fusco either directed that Hatcher be disciplined or actually knew that she would be and failed to intervene.  The complaint indicates that Fusco directed teachers to report on students who were participating in "Day of Silence."  Hatcher was one

---

[4]    Even if that were the only reasonable factual inference, moreover, we question whether it would support the legal argument that Fusco is entitled to qualified immunity.  See O'Rourke v. Hayes, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004) (quoting Brent v. Ashley, 247 F.3d 1294, 1306 (11th Cir. 2001)) ("[S]ince World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there is a 'reason why any of them should question the validity of that order.'").

such student.  Hatcher was summoned to the dean's office and informed that she was being punished because Fusco had "told [her] not to do this."  The next business day, Fusco reported on Hatcher's discipline to the superintendent.  It is reasonable to infer that Fusco may have caused or knowingly failed to prevent Hatcher's in-school suspension.[5]

**AFFIRMED.**

---

[5]  We decline Fusco's invitation to vacate and remand for further analysis.  See generally Danley v. Allen, 480 F.3d 1090 (11th Cir. 2007) (per curiam).